IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT MARSHALL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:16-cv-477-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Before the court is Robert Marshall's ("Marshall") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. # 1.[1]  For the reasons that follow, the court concludes that Marshall's § 2255 motion should be denied without an evidentiary hearing and that this case should be dismissed with prejudice.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

## I.   INTRODUCTION

In February 2013, a jury found Marshall guilty of conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 846 & 841(a)(1), and using a communication facility (a cell phone) to facilitate the conspiracy, in violation of 21 U.S.C. § 843(b).  After a sentencing hearing on June 4, 2013, this court sentenced Marshall to 300 months in prison on the

---

[1] References to "Doc(s). #" are to the document numbers of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of Court.  Unless otherwise indicated, pinpoint citations are to the page of the electronically filed document in the court's CM/ECF filing system, which may not correspond to pagination on the "hard copy" of the document presented for filing.

conspiracy count and one year in prison on the use-of-a-communication-facility count, the terms to run concurrently.

Marshall appealed, arguing that (1) the court erred in granting the Government's "reverse *Batson*[2] challenge"; (2) the evidence against him was insufficient to establish he was guilty of either conspiracy to distribute cocaine or using a cell phone to facilitate the conspiracy and established only that he engaged in buy-sell transactions; and (3) the court erred in allowing the Government to introduce Fed.R.Evid. 404(b) evidence that he was convicted in 1999 of the sale of a controlled substance. *See* Doc. # 16-22.

On June 1, 2015, the Eleventh Circuit affirmed Marshall's convictions and sentence. *United States v. Reese*, 611 F. App'x 961 (11th Cir. 2015); Doc. # 16-23. Marshall filed a petition for writ of certiorari in the United States Supreme Court, which that court denied on November 2, 2015. Doc. # 16-25.

On June 17, 2016, Marshall, acting *pro se*, filed this § 2255 motion asserting claims that his trial counsel rendered ineffective assistance by (1) failing to present a defense that he was in merely a buyer/seller relationship with his codefendants, that he bought cocaine for his personal use and the use of his friends (and not for resale), and that he was a drug addict, not a drug distributor; (2) failing to challenge the accuracy of the Government's organizational chart depicting the structure of the drug ring and the roles of the various coconspirators; (3) failing to challenge the admission of Fed.R.Evid. 404(b) evidence of his prior drug-sale conviction on the ground the court made no finding that the probative

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

value of such evidence outweighed its prejudicial value; (4) failing to advise him of his right to testify and preventing him from testifying in his own defense; (5) failing to argue that a cell phone call he made to codefendant Delmond Bledson was to buy drugs for his personal use only, and thus he could not be guilty of the 21 U.S.C. § 843(b) count in the indictment; (6) failing to move for a severance of his trial from that of his codefendants; and (7) failing to investigate one of the prior convictions used to classify him as a career offender at sentencing.  Doc. # 1 at 4–10; Doc. # 2 at 4–57.  Marshall also asserts claims that he is actually innocent of the offenses of which he was convicted, *see* Doc. # 1 at 4; Doc. # 2 at 4–8, and that his guidelines sentence enhancement as a career offender violates the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), *see* Doc. # 2 at 53–56.

On February 13, 2017, Marshall amended his § 2255 motion to add a claim that under *Mathis v. United States*, 136 S. Ct. 2243 (2016), his prior Alabama convictions for cocaine distribution should not have been used to classify him as a career offender because the convictions were obtained under a statute, § 13A-12-211, Ala. Code 1975, that defines a controlled substance offense more broadly than the definition of the offense contained in the career offender guideline at U.S.S.G. § 4B1.2(b).  Doc. # 24.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution

or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

**B.   Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable.  *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court must  "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance."  *Id*.  (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the

petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1.   *Failure to Present Different Defense to Conspiracy Count*

Marshall claims that his trial counsel, James R. Cooper, Jr., rendered ineffective assistance of counsel by failing to present a defense that Marshall was merely in a buyer/seller relationship with his codefendants, that he bought cocaine for his personal use

and the use of his friends (and not for resale), and that he was a drug addict, not a drug distributor.   Doc. # 1 at 4; Doc. # 2 at 4–9.   Marshall maintains that "a cursory investigation" by Cooper would have revealed evidence that Marshall was "a known drug user" who had been forced to enroll in a drug treatment program and had failed several state-ordered drug tests during the DEA's investigation of the drug ring.  Doc. # 2 at 6–9. The presentation of such evidence, he says, would have countered the Government's evidence that he was involved in the conspiracy to distribute cocaine.  *Id.*

In an affidavit addressing Marshall's allegations, Cooper avers that Marshall never told him he was chemically dependent or that he was only buying cocaine for his personal use.  Doc. # 11 at 1.  According to Cooper, in order to make the most of such a defense, Marshall would have had to testify, but Marshall chose not to testify after he was advised his prior drug convictions could be used to impeach him.  *Id.* at 1–2.  Cooper states he also advised Marshall that his codefendants Delmond Bledson, Tony Gardner, and Dikka Daniels could testify in rebuttal about Marshall's drug buys if he testified.  *Id.* at 2.

The trial transcript reflects that Cooper presented a defense, through his arguments and witness cross-examination, that there was little evidence to connect Marshall to the conspiracy as compared to his codefendants; that there was no evidence connecting Marshall to the conspiracy until close to its end in late March or early April 2012; and that the Government's cooperating witnesses (particularly Tony Gardner and Dikka Daniels) were motivated to falsely incriminate Marshall because of favorable plea deals they had made.  Cooper also emphasized that Bledson, a kingpin in the drug conspiracy, professed to have little familiarity with Marshall.  *See, e.g.*, Doc. # 16-6 at 17 & 50–53; Doc. # 16-7

6

at 73–75; Doc. # 16-10 at 41–42 & 51–52; Doc. # 16-13 at 12; Doc. # 16-14 at 24–27.  It was not professionally unreasonable for Cooper to choose this defense strategy over a strategy rooted in the claim that Marshall was merely in a buyer/seller relationship with his codefendants and that he bought cocaine only for his personal use.

Strategic choices of counsel made after investigation of the law and facts relevant to plausible options are virtually unchallengeable.  *Strickland*, 466 U.S. at 690–91.  Even if in retrospect the strategy to pursue one line of defense over another appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent lawyer would have chosen it.  *Adams v. Wainwright*, 709 F.2d 1443, 1145 (11th Cir. 1983); *see also United States v. DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987) (reviewing courts are "not [to] second-guess trial counsel's defense strategy simply because the chosen strategy has failed").  Accordingly, tactical or strategic choices by counsel generally cannot support a collateral claim of ineffective assistance.  *United States v. Costa*, 691 F.2d 1358, 1364 (11th Cir. 1982); *Coco v. United States*, 569 F.2d 367, 371 (5th Cir. 1978).  The line of defense chosen by Cooper was not "so patently unreasonable that no competent lawyer would have chosen it."  *Adams*, 709 F.2d at 1145.

Moreover, Marshall demonstrates no reasonable likelihood that Cooper would have succeeded by pursuing a different line of defense.  The Eleventh Circuit rejected Marshall's argument on direct appeal that the evidence was insufficient to convict him of the conspiracy and established only that he engaged in buy-sell transactions.  In rejecting the argument, the Eleventh Circuit held:

Viewing the evidence in the light most favorable to the Government and drawing all reasonable inferences and credibility determinations in the Government's favor, there was sufficient evidence for a reasonable jury to convict Marshall.  Marshall's knowledge of and knowing participation in the conspiracy could reasonably be inferred from his repeated purchases from Rajneesh Dikka Daniels of [Willie] Davis's cocaine and from his relationship with Tony Gardner, who could reasonably be construed as a middle man between Marshall and Bledson; it could also be inferred from his meeting with Bledson, the drug purchase associated with that meeting, and his subsequent telephone conversation with Bledson arranging for further transactions.  The jury was free to discount as unreliable Bledson's statement that Marshall was not a member of the conspiracy.  *See [United States v.] Reeves*, 742 F.3d [487,] at 500 [(11th Cir. 2014)].

611 F. App'x  at 966.

"While the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement, an agreement to distribute drugs may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to a purchaser."  *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) (internal quotations omitted).  Here, the evidence of Marshall's repeated purchases of large amounts of cocaine demonstrated both "a prior or contemporaneous understanding," *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993), and a "continuing relationship," as opposed to a simple buyer-seller relationship, *Thompson*, 422 F.3d at 1292.  *See United States v. Johnson*, 889 F.2d 1032, 1035 (11th Cir. 1989) (regularity of purchases of cocaine by defendant from his supplier viewed as a refutation that the evidence only showed a buyer-seller relationship).  Given the evident weakness of such a defense, Marshall demonstrates no prejudice resulting from Cooper's failure to pursue a defense that he was in a mere buyer/seller relationship with his codefendants and bought cocaine for his personal use only

8

Marshall also fails to demonstrate that Cooper performed deficiently in failing to investigate his alleged drug use and failing to present a defense that he was a drug addict and not a drug distributor. As noted above, Cooper avers that Marshall never told him he was chemically dependent or that he was buying cocaine only for his personal use. *See* Doc. # 11 at 1. Such a defense would have required testimony from Marshall who, as explained more fully below, chose not to testify. *Id*. at 1–2. As the Government argues, Cooper's defense strategy emphasizing the lack of evidence tying Marshall to the conspiracy was "a much more reasonable strategy than painting Marshall as a drug addict." Doc. # 16 at 52. "[P]resenting evidence of a defendant's drug addiction to a jury is often a 'two-edged sword': while providing a mitigating factor, such details may alienate the jury[.]" *Pace v. McNeil*, 556 F.3d 1211, 1224 (11th Cir. 2009). Marshall's admission to buying cocaine, even if for personal use for his alleged drug addiction, would have constituted additional evidence that he purchased cocaine from his codefendants on numerous occasions—evidence that could bolster an inference that he was actually involved in the conspiracy. As the Government observes, Daniels testified that Marshall would pick up two packages of 125 grams of cocaine from her at a time. A claim that such purchases were for mere personal use would have been implausible and as weak as a "mere buyer/seller" defense.

Finally, Marshall demonstrates no reasonable likelihood that the outcome of his trial would have been different had Cooper investigated his drug addiction and used his alleged addiction in a defense. As noted above, evidence of Marshall's drug addiction would have provided further evidence that he purchased cocaine regularly from his codefendants. And

an argument that Marshall was buying cocaine for his own use would not be dispositive of his noninvolvement in the conspiracy. *See United States v. Burgos*, 518 F. App'x 728, 729–30 (11th Cir. 2013) (where methamphetamine addict asserted that he joined a drug conspiracy to feed his own addiction).

Marshall has not demonstrated that Cooper's decision to present the defense he did, instead of the one Marshall now favors, was professionally unreasonable. Nor does he demonstrate prejudice resulting from Cooper's decision to eschew other defenses. Therefore, Marshall is not entitled to any relief on this claim of ineffective assistance of counsel.

### 2.   *Failure to Challenge Organizational Chart*

Marshall contends that Cooper rendered ineffective assistance of counsel by failing to challenge the accuracy of the Government's organizational chart depicting the structure of the drug ring and the roles of the various coconspirators. Doc. # 1 at 5; Doc. # 2 at 14–17. Marshall maintains that the chart was inaccurate and prejudicial and that Cooper should have objected to its admission.[3] Doc. # 2 at 14–17.

The trial judge instructed the jury that the organizational chart was valid only to the extent it reflected the underlying evidence and that jurors should give the chart only so

---

[3] Regarding the organizational chart, Cooper states in his affidavit:

> The government had a poster with the names and faces of all defendants so the jury and all participants could keep track of the parties involved. That was all it was used for. It was not suggestive of being some chart of the organization but only of putting a name to a face. While Mr. Cooper did not like the poster, it was not legally objectionable and thus he could not have prevented its use.

Doc. # 11 at 2.

much weight as they believed it deserved.  Doc. # 16-14 at 38.  Although Marshall argues that the chart was inaccurate, the alleged inaccuracies he cites were supported by evidence presented at trial.  Marshall objects to lines drawn on the chart connecting him to Willie Davis and Delmond Bledson, maintaining there was no actual connection between him and these two members of the conspiracy.  *See* Doc. # 2 at 16.  However, the Government presented testimony from witnesses connecting Marshall to both Davis and Bledson regarding activities to further the conspiracy.  *See* Doc. # 16-7 at 52; Doc. # 6-10 at 4–10 & 49–50.  Therefore, Marshall fails to identify any apparent inaccuracies on the chart to which Cooper might have successfully objected.  As the district court instructed the jury, the weight to assign the chart was up to the jurors.  Thus, an objection to admission of the chart on grounds it was inaccurate would not have been successful.  *See Cape v. Francis*, 741 F.2d 1287 (11th Cir. 1984) (Where evidence is admissible, counsel's failure to object does not constitute ineffective assistance of counsel).  Consequently, Marshall is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   *Failure to Challenge 404(b) Evidence*

Marshall contends that Cooper was ineffective for failing to challenge admission of Fed.R.Evid. 404(b) evidence that he was convicted in 1999 of the sale of a controlled substance, on the ground the court made no finding that the probative value of the evidence outweighed its prejudicial value.[4]  Doc. # 1 at 6; Doc. # 2 at 18–22.

---

[4] Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act" may be used to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed.R.Evid. 404(b).  Before evidence of a prior criminal act may be admitted, the district court must determine, among other things, that "the probative value of the evidence" is not "substantially outweighed by its undue prejudice."  *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995).

The record reflects that, before ruling that evidence of Marshall's 1999 conviction was admissible, the court heard and weighed arguments from both Cooper and the Government regarding the probity of the conviction and its potential for creating undue prejudice.  Doc. # 16-13 at 4–7.  By ruling that the evidence was admissible, the court found that the probative value of the evidence outweighed its prejudicial value.  Further, on direct appeal, Marshall argued that the district court erred in allowing the Government to introduce evidence of his 1999 conviction, and the Eleventh Circuit held that the district court did not abuse its discretion in admitting the prior conviction.  *See* 611 F. App'x at 966–67.  The Eleventh Circuit's opinion indicates that the appellate court considered the court to have assessed the probative versus prejudicial value of the evidence.  *Id*.

Marshall does not demonstrate deficient performance in Cooper's failure to object to the district court's ruling admitting Marshall's prior conviction based on the argument that the court failed to determine if the probative value of the evidence outweighed its prejudice.  Nor does Marshall demonstrate any resulting prejudice from Cooper's failure to object on this ground.  Consequently, Marshall is entitled to no relief on this claim of ineffective assistance of counsel.

### 4.   *Right to Testify*

Marshall claims that Cooper rendered ineffective assistance of counsel by failing to advise him of his constitutional right to testify and preventing him from testifying in his own defense.  Doc. # 1 at 4 & 8; Doc. # 2 at 23–25.  Besides alleging that Cooper never told him he had a right to testify, Marshall maintains that he informed Cooper "he would

like to testify," but Cooper told him to "just hold on if that's what you want to do" and then did not call him to the stand.  Doc. # 2 at 23–24.

The Sixth Amendment right of a defendant to testify at his criminal trial is both fundamental and personal to him.

> Even more fundamental to a personal defense than the right of self-representation, which was found to be "necessarily implied by the structure of the [Sixth] Amendment," . . . , is an accused's right to present his own version of the events in his own words.  A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness.

*Rock v. Arkansas*, 483 U.S. 44, 52 (1987).  *See also United States v. Teague*, 953 F.2d 1525, 1532 (1992).  When counsel prevents a defendant from exercising this fundamental right, counsel's actions fall "below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688; *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999).  Even in the context of a denial of the right to testify, a defendant who establishes the performance prong of the *Strickland* analysis must still demonstrate prejudice by showing there is a reasonable probability that the results of the proceeding would have been different. *Fishbone v. Sec'y for Dep't. of Corrs.*, 165 F. App'x. 800, 801 (11th Cir. 2006) (citing *Strickland*).

Addressing Marshall's claim that he failed to advise him of his right to testify and prevented him from testifying, Cooper states:

> Alas for Mr. Marshall that is just not true.  Mr. Cooper informed him that all his past criminal convictions would be laid out before the Jury.  Such a display would not be viewed favorably.  Mr. Cooper then inquired whether or not Mr. Marshall wanted to testify.  Mr. Marshall declined.

As is often the case, no one but the parties was present.  But consider, Mr. Marshall had at that time extensive experience with the criminal justice system.  He had two prior drug convictions.  He had several other arrests and convictions for DUI, Attempting to Elude, False names etc.  He had been on and off probation.  He had a lot of street knowledge about the perils of testifying.  He knew all those convictions would be brought up if he testified.  He knew that once on the stand his past life of crime would be fodder for the Government.  He just did not want to testify as he knew the risks.

Doc. # 11 at 2.

At trial, just before the Government was to rest its case, the following exchange took place between the court and the defendants' lawyers, including Cooper:

[THE COURT:]  The last item I need—and we can go ahead and conclude now and maybe take a short break—is the issue of the 18 defendants testifying.  Off the record yesterday I was informed by counsel for—each counsel for each defendant that the defendant would not be testifying.  And it's my practice to make that—outside the presence of the jury to make that determination, that it's a voluntary decision on the part of a defendant after consulting with his counsel.  So now, I would ask—I'm going to address all the defendants at once, but I would ask counsel, starting with Mr. Davis's counsel, has there been any change in your position on this matter or your client's position on this matter?

. . . .

THE COURT:  All right. Mr. Cooper?

MR. COOPER:  Jim Cooper for Robert Marshall.  I discussed the pros and cons with my client of testifying.  He chooses not to testify, Your Honor.

Doc. # 16-13 at 14.

The district court then questioned Marshall regarding whether he wished to testify:

[THE COURT:]  Mr. Marshall, I'll ask you the same questions.  You understand you have a right to testify in this case; is that correct?

DEFENDANT MARSHALL:  Yes, sir.

THE COURT:  And you've consulted with your lawyer about this, and have you decided that you do not want to testify in this case?

DEFENDANT MARSHALL:  Yes, sir, Your Honor.

THE COURT:  Have you decided that's in your best interests?

DEFENDANT MARSHALL:  Yes, sir.

THE COURT:  Okay. Thank you. You may be seated.

Doc. # 16-13 at 14–15.

As the trial transcript shows, Marshall affirmed to the district court that (1) he understood his right to testify, (2) he discussed whether or not to testify with Cooper, (3) it was his (Marshall's) decision not to testify, and (4) he believed this decision was in his best interests.  Thus, regarding the factual issue whether Cooper failed to advise Marshall of his right to testify and prevented him from testifying in his own defense, Marshall's current version of events is so discredited by the record that no reasonable trier of fact could believe it.  A party's sworn account of events may be disregarded if it is "blatantly contradicted by the record, so that no reasonable [trier of fact] could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007). *See also, e.g., Van T. Junkins & Assoc., Inc. v. U.S. Indus.*, 736 F.2d 656, 658–59 (11th Cir.1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

Further, even if Marshall may have desired to testify, his statements to the district court constituted a waiver of that right.  "[I]f an accused desires to exercise [his]

15

constitutional right to testify the accused must act affirmatively and express to the court [his] desire to do so at the appropriate time or a knowing and voluntary waiver of the right is deemed to have occurred." *United States v. Kamerud*, 326 F.3d 1008, 1017 (8th Cir. 2003) (citation omitted).

For the foregoing reasons, the court concludes that no evidentiary hearing is required on this claim. A district court need not hold on evidentiary hearing on allegations in a § 2255 motion that are "affirmatively contradicted by the record." *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citations omitted). In open court, Marshall told the trial judge that he had discussed his right to testify with counsel, he understood the right, and it was his decision not to testify. Therefore, he cannot be heard to claim now that his trial counsel Cooper interfered with this right. This claim of ineffective assistance of counsel is due to be denied without an evidentiary hearing.

### 5.  *Cell Phone Call to Bledson*

Marshall contends that Cooper was ineffective for failing to argue that his recorded cell phone call to Delmond Bledson was to buy drugs for his personal use only, and therefore he could not be guilty of the § 843(b) count, which required that the cell phone be used to facilitate a felony.[5]  Doc. # 1 at 10; Doc. # 2 at 26–29.

---

[5] Title 21 § 843(b) provides, in pertinent part:

It shall be unlawful for any person knowingly or intentionally to use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of this subchapter or subchapter II of this chapter. . . . For purposes of this subsection, the term "communication facility" means any and all public and private instrumentalities used or useful in the transmission of writing, signs,

Marshall's conviction under the § 843(b) count was based on a cell phone call he made to Bledson in April 2012 to arrange the purchase of cocaine.  *See, e.g.*, Doc. # 16-1 at 10.  On direct appeal, Marshall challenged the sufficiency of the evidence to sustain his § 843(b) conviction.  The Eleventh Circuit rejected the claim, holding that "[t]he same evidence from which a reasonable jury could conclude Marshall was involved in a conspiracy to distribute cocaine would allow a jury to conclude Marshall's telephone call with Bledson was intended to facilitate the conspiracy."  611 F. App'x at 966.

The evidence at trial showed that Marshall bought large quantities of cocaine on numerous occasions from conspiracy kingpin Willie Davis and, on at least one occasion, bought a large quantity of cocaine from Bledson, the other kingpin in the conspiracy.[6] Testimony indicated that coconspirator Tony Gardner originally put Marshall in touch with Bledson and, in March 2012, operated as a middle man in Marshall's purchase of 63 grams of cocaine from Bledson.  *See, e.g.,* Doc. # 16-10 at 8–10 & 49–52.  In April 2012, Marshall contacted Bledson directly by cell phone, seeking to purchase another large amount of cocaine.  Doc. # 16-10 at 9–10.  During this phone conversation, Bledson told Marshall he only had a "31," street slang for 31 grams of cocaine.[7]  Marshall told Bledson that this

---

signals, pictures, or sounds of all kinds and includes mail, telephone, wire, radio, and all other means of communication.

21 U.S.C. § 843(b).

[6] *See* Doc. # 16-10 at 39 (where Bledson acknowledges his role as a kingpin in the conspiracy).

[7] *See* Doc. # 16-8 at 53 (Bledson's testimony that 31-gram packages of cocaine were referred to as "31s" and commonly sold for $1,050); Doc. # 16-10 at 9–10 (Bledson's testimony regarding cell phone conversation with Marshall).

amount would do him no good, indicating that he wanted to buy a larger amount. Marshall also told Bledson to save his phone number on his own phone, so when he called Bledson in the future about further cocaine buys, Bledson would recognize that the call was coming from Marshall. *See* Doc. # 16-10 at 9–10.

As Cooper observes in his affidavit addressing Marshall's ineffective-assistance claim, 31 grams of cocaine is much more than an individual would acquire for personal use and is an amount typically broken down into smaller quantities before being sold off to ultimate users. Doc. # 11 at 3. In light of the trial evidence indicating that Marshall purchased 63 grams of cocaine from Bledson in March 2012, sought to make another purchase of more than 31 grams in April 2012, and asked Bledson to save his phone number to facilitate future calls about cocaine buys, an argument by Cooper that Marshall's April 2012 phone call to Bledson was merely to buy drugs for personal use would have been implausible. Rather than presenting such an argument, Cooper sought to present a defense that there was little evidence to connect Marshall to the conspiracy as compared to his codefendants and that he was a minimal participant in the criminal organization.

Because the evidence did not support a claim that Marshall's April 2012 phone call to Bledson was merely to buy drugs for his personal use, Cooper did not render ineffective assistance of counsel by failing to make such an argument.[8] Marshall is entitled to no relief on this claim.

---

[8] Marshall's argument in support of this claim is similar to his argument in support of his first claim discussed previously in this Recommendation (*see* Part II.B.1, above).

### 6.   Failure to Move for Severance

Marshall says Cooper was ineffective for failing to move to sever his trial from that of his codefendants.  Doc. # 2 at 30–33.[9]  According to Marshall, his joint trial with his codefendants enabled the Government to present unduly prejudicial evidence of unlawful acts by his codefendants in which he was not involved.  *Id.* at 30.

As a general rule, defendants who are jointly indicted should be tried together. *United States v. Morales*, 868 F.2d 1562, 1571 (11th Cir. 1989); *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976).  This is particularly true in conspiracy cases, where charges against multiple defendants may be proven with substantially the same evidence. *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir. 1987).  Severance is only justified when a defendant can show prejudice from which the trial court cannot provide adequate protection.  *Dorsey*, 819 F.2d at 1058; *Morrow*, 537 F.2d at 136.  The fact that a defendant may suffer some prejudice is not enough to justify severance, as a degree of prejudice is inherent in joint trials.  *United States v. Harris*, 908 F.2d 728, 736 (11th Cir. 1990). Defendants' allegations of prejudice must be balanced against the interest of judicial economy and concomitant policy favoring joint trials in conspiracy cases. *United States v. Kopituk*, 690 F.2d 1289, 1318 (11th Cir. 1982).

Prejudice is not established simply because a defendant claims to be a minor figure and argues that much of the evidence at trial may apply only to codefendants.  *See United States v. Smith*, 918 F.2d 1501, 1509–10 (11th Cir. 1990).  A defendant does not suffer

---

[9] Marshall did not list this claim on the § 2255 motion form he filed.  *See* Doc. # 1.  He presents the claim in the Memorandum of Law he filed in support of his § 2255 motion.  Doc. # 2.

compelling prejudice even if much of the evidence actually produced at trial applies only to codefendants. *Id*.; *United States v. Casamayor*, 837 F.2d 1509, 1511 (11th Cir. 1988). The possible prejudicial effects of such disparity can be significantly alleviated if the trial court instructs the jury that it must consider the evidence against each defendant on a separate and independent basis. *United v. Pritchett*, 908 F.2d 816, 822 (11th Cir. 1990).

Here, Marshall's cursory assertions about the Government's presentation of evidence of unlawful acts by his codefendants in which he was not involved do not establish compelling prejudice sufficient to justify severance. Nor does Marshall demonstrate a degree of prejudice sufficient to outweigh the interest of judicial economy and the policy favoring joint trials in conspiracy cases. *Kopituk*, 690 F.2d at 1318. Marshall demonstrates no reasonable likelihood that a motion for severance of his trial from that of his codefendants would have succeeded. Further, the trial court instructed the jury that it must consider the evidence against each defendant on a separate and independent basis, alleviating the possible prejudicial effects of the presentation of evidence of unlawful acts by Marshall's codefendants in which Marshall was not involved. *Pritchett*, 908 F.2d at 822. *See* Doc. # 16-14 at 41.

Marshall does not demonstrate deficient performance in Cooper's failure to move to sever his trial from that of his codefendants, and he fails also to demonstrate any resulting prejudice. He is entitled to no relief on this claim of ineffective assistance of counsel.

### 7.   *Failure To Investigate Prior Conviction*

Marshall argues that Cooper rendered ineffective assistance of counsel by failing to investigate one of the prior convictions the court relied on to classify him as a career

offender.  Doc. # 2 at 34–37.[10]  Marshall maintains that the prior conviction was too stale to be considered for career offender status.  *Id*.

Section 4B1.1 of the Sentencing Guidelines classifies a defendant as a career offender if (1) he was at least 18 years old when he committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. 4B1.1(a).

Under U.S.S.G. § 4A1.2(e)(1), if a defendant is incarcerated during any part of a sentence exceeding one year and one month within fifteen years of the defendant's commencement of his instant offense, that sentence is countable for computing a defendant's criminal history, and, if it otherwise qualifies, it is countable as a prior conviction for purposes of the career offender enhancement.  *See* U.S.S.G. § 4A1.2(e)(1); U.S.S.G. § 4B1.2 cmt. n.3 (providing that "[t]he provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1," the career offender guideline).

Here, one of the prior drug convictions the district court relied on to enhance Marshall's sentence under the career offender guideline was Marshall's April 1997

---

[10] Marshall did not list this claim on the § 2255 motion form; he presents it in the supporting Memorandum of Law.  Doc. # 2.

Autauga County, Alabama conviction for cocaine distribution.[11]   *See* Doc. # 16-17 at 10–11 & 43.   For that conviction, Marshall was sentenced to 15 years' imprisonment, split to serve three years in confinement with the balance on probation.   *Id.*   Marshall maintains that the presentence investigation report ("PSI") erroneously states that the balance of his 15-year sentence after the three-year split was "suspended" for probation.   Doc. # 2 at 35. According, to Marshall, the state trial court did not "suspend" the balance of his sentence. *Id*.   He argues that Cooper was ineffective for failing to investigate and discover this fact. Marshall seems to believe this fact somehow places his 1997 controlled substance conviction outside the 15-year window from his commencement of his instant offense disqualifying that conviction from being considered for career offender status.   *Id.*

Marshall's argument notwithstanding, the terminology applied to the probationary portion of Marshall's sentence for his 1997 conviction—i.e., whether the balance of his 15-year sentence after the three-year split was technically "suspended" for probation—is of no consequence, certainly not as to whether the conviction could be used to enhance Marshall's sentence under the career offender guideline.   It is undisputed that Marshall's probation on the 1997 conviction was revoked in October 1998, whereupon Marshall was re-incarcerated to serve the balance of his original 15-year sentence.   *See* Doc. # 16-17 at 10–11, & 43; # 16-17 at 22; Doc. # 16-18 at 32–34.   Following the revocation of his probation, Marshall was incarcerated on his 1997 conviction from 1998 to 2012.   Doc. #

---

[11] Marshall was actually convicted of three counts of cocaine distribution in the 1997 Autauga County case. The second prior drug conviction the district court relied on to enhance Marshall's sentence under the career offender guideline was an April 1999 Autauga County conviction for cocaine distribution.

16-18 at 34. Therefore, Marshall was incarcerated on the 1997 conviction within 15 years of his commencement of his instant offense in 2012. Consequently, that conviction was not "stale" and could be considered for career offender status. *See* U.S.S.G. § 4A1.2(e)(1); U.S.S.G. § 4B1.2 cmt. n.3.

Marshall does not demonstrate deficient performance in Cooper's alleged failure to investigate his 1997 conviction and his resulting sentence,[12] and he fails also to demonstrate any prejudice. Therefore, he may not have relief on this claim of ineffective assistance of counsel.

## C.   Actual Innocence

Marshall says he is actually innocent of the offenses of which he was convicted. Doc. # 1 at 4; Doc. # 2 at 4–8.

Habeas petitioners asserting actual innocence must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998). The Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at

---

[12] The record reflects that Cooper objected to consideration of the Marshall's 1997 conviction for career offender status on grounds of staleness. Doc. # 16-17 at 20; Doc. # 16-18 at 32–34. In making this objection, Cooper did not argue, as Marshall does here, that the balance of Marshall's 15-year sentence after the three-year split was not "suspended" for probation. However, as explained above, the terminology applied to the probationary portion of Marshall's split sentence is of no consequence to whether the 1997 conviction could be considered for career offender status.

trial.  Because such evidence is obviously unavailable in the vast majority of
cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

Here, Marshall points to no new reliable evidence, as required by *Schlup*, to support

a claim of actual innocence.  Instead, Marshall reargues the trial evidence and claims it was

insufficient to sustain his convictions for conspiracy to distribute cocaine and using a cell

phone to facilitate the conspiracy.  Doc. # 2 at 4–8.  Allegations going to the sufficiency of

and/or weight afforded the evidence do not constitute "new reliable evidence" regarding a

petitioner's actual innocence.  *See Rutledge v. Neilsen*, 2012 WL 3778987, at *7 (M.D.

Ala. Jul. 30, 2012).  Moreover, on direct appeal, Marshall challenged the sufficiency of the

evidence to sustain both of his convictions.  The Eleventh Circuit rejected his claims and

held there was sufficient evidence to support the convictions.  *See* 611 F. App'x at 966.

"The district court is not required to reconsider claims of error that were raised and

disposed of on direct appeal."  *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir.

2000); *see also United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981).  If a claim

has previously been raised on direct appeal and decided adversely to a defendant, it cannot

be relitigated in a collateral attack under § 2255.  *See Nyhuis*, 211 F.3d at 1343.

Furthermore, "[a] rejected claim does not merit rehearing on a different, but previously

available, legal theory."  *Id.*

Marshall is entitled to no relief on his claims of actual innocence.  He points to no

new reliable evidence to support his claims, and the Eleventh Circuit has already rejected

his challenges to the sufficiency of the evidence to sustain the convictions.

**D.   Career Offender Enhancement and *Johnson v. United States***

Marshall claims that his guidelines sentence enhancement as a career offender violates the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Doc. # 2 at 53–56.[13]

In *Johnson,* the Supreme Court held that the definition of "violent felony" under the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  *See* 135 S. Ct. at 2557–59.  In April 2016, the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review.  *Welch v. United States*, 136 S.Ct. 1257, 1264–65 (2016).

Here, the district court relied on Marshall's 1997 and 1999 Alabama convictions for unlawful distribution of cocaine in sentencing Marshall as a career offender.  Marshall's attempted reliance on *Johnson* to challenge the district court's application of the career offender enhancement in his case is misplaced.  *Johnson* does not extend to defendants sentenced under the career offender guideline, and it does not apply to prior drug offenses. *See Beckles v. United States*, 137 S. Ct. 886, 892–96 (2017); *Johnson*, 135 S. Ct. at 2563. Marshall is entitled to no relief on this claim.

---

[13] Marshall did not list this claim on the § 2255 motion form; he presents it in his supporting Memorandum of Law.  Doc. # 2.

## E.    February 13, 2017 Amendment

On February 13, 2017, Marshall amended his § 2255 motion to add a new claim that under *Mathis v. United States*, 136 S. Ct. 2243 (2016), his Alabama convictions for cocaine distribution should not have been used to classify him as a career offender because the convictions were obtained under a statute, § 13A-12-211, Ala. Code 1975,[14] that defines a controlled substance offense more broadly than the definition of the offense contained in the career offender guideline at U.S.S.G. § 4B1.2(b).[15]  Doc. # 24.  The Government argues, correctly, that Marshall's new claim is time-barred under the one-year limitation period in 28 U.S.C. § 2255(f).[16]  Doc. # 26 at 3–7.

---

[14] Section 13A-12-211, Ala. Code 1975, provides, in pertinent part:

> (a) A person commits the crime of unlawful distribution of controlled substances if, except as otherwise authorized, he or she sells, furnishes, gives away, delivers, or  distributes a controlled substance enumerated in Schedules I through V.

> . . . .

> (c) A person commits the crime of unlawful possession with intent to distribute a controlled substance if, except as otherwise authorized by law, he or she knowingly possesses any of the following quantities of a controlled substance:

> > (1) More than eight grams, but less than 28 grams, of cocaine or of any mixture containing cocaine.

§ 13A-12-211, Ala. Code 1975

[15] Section 4B1.2(b) of the career offender guideline defines a "controlled substance offense," in pertinent part, as a felony offense "that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance, . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense."  U.S.S.G. § 4B1.2(b).

[16] The timeliness of a § 2255 motion is governed by 28 U.S.C. § 2255(f), which provides:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

As a general rule a § 2255 motion, and all claims for relief under § 2255, must be filed within a year of the date on which the petitioner's judgment of conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).[17]  For someone who files a petition for writ certiorari with the United States Supreme Court, a judgment of conviction becomes final when the Supreme Court denies the petition for writ of certiorari.  *Kaufmann v. United States*, 282 F.3d 1336, 1339 (11th Cir. 2002).  Marshall's conviction became final, therefore, on November 2, 2015, the date on which the Supreme Court denied his petition for writ of certiorari.  *See* Doc. # 16-25.  Therefore, any motion or claim by Marshall seeking relief under § 2255 must have been filed by November 2, 2016.  Marshall filed the amendment to his § 2255 motion raising his claim under *Mathis* on February 13, 2017—well after expiration of the limitation period in § 2255(f)(1).

The Federal Rules of Civil Procedure provide for the relation back of amendments filed after the running of a period of limitation in certain circumstances.  Rule 15(c) of the

---

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

[17] Marshall sets forth no facts or argument to establish that he may use 28 U.S.C. § 2255(f)(2), (3), or (4) as a triggering event for limitations purposes for the claim in his amendment.  *See* 28 U.S.C. § 2255(f)(2)–(4).

Federal Rules of Civil Procedure provides that "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* Fed.R.Civ.P. 15(c)(2). "'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed." *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000). However, "Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts." *Pruitt v. United States*, 274 F.3d 1315, 1317 (11th Cir. 2001). This is so the government has sufficient notice of the facts and claims giving rise to the proposed amendment. *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002) (quoting *Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000)). An untimely amendment to a § 2255 motion does not relate back to the date of the original motion where it "seek[s] to add a new claim or to insert a new theory into the case." *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (emphasis omitted). It is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion. *See United States v. Craycraft*, 167 F.3d 451, 456–57 (8th Cir. 1999) (holding that an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely ineffective assistance claims for not pursuing a downward departure, not raising an objection at trial, and not challenging a prior conviction).

Here, Marshall's new claim, based on his contention that his Alabama cocaine distribution convictions were obtained under a statute that defines a controlled substance

offense more broadly than the definition of the offense contained in the career offender guideline at U.S.S.G. § 4B1.2(b), bears no legal or factual relationship to any of his earlier claims and seeks to insert a new theory of relief into the case. Therefore, the claim does not relate back under Rule 15(c) to claims in the original and timely § 2255 motion. Because this new claim does not relate back, it is time-barred from review under § 2255's one-year limitation period. *See Farris v. United States*, 333 F.3d 1211, 1215–16 (11th Cir. 2003); *Pruitt*, 274 F.3d at 1319.

Even if Marshall's amended claim were timely (and it is not), it would not entitle him to relief, because it lacks merit. In *United States v. Landaverde-Cruz*, 629 F. App'x 854 (11th Cir. 2015), the Eleventh Circuit held that any conviction under § 13A-12-211, Ala. Code 1975, necessarily infers an intent to distribute a controlled substance. *See* 629 F. App'x at 856. Thus, a conviction under § 13A-12-211, Ala. Code 1975, categorically qualifies as a conviction for a controlled substance offense under the career offender guideline at U.S.S.G. § 4B1.2(b). The Eleventh Circuit and district courts within the Eleventh Circuit have elsewhere held that unlawful distribution of a controlled substance under Alabama law is a serious drug offense. *See United States v. Smiley*, 263 F. App'x 765, 769 (11th Cir. 2008) ("Smiley had been convicted of three counts of unlawful distribution of a controlled substance under Ala. Code § 13A-12-211, a Class B felony punishable by not more than twenty years. Thus, Smiley's prior convictions meet the definition of a serious drug offense.") (internal citations omitted); *United States v. Beasley*, 447 F. App'x 32, 36–37 (11th Cir. 2011) (finding conviction for unlawful distribution of a controlled substance under Alabama law was a serious drug offense); *Thomas v. United*

*States*, 2016 WL 4920046, *5 (N.D. Ala. Sep. 15, 2016) (finding conviction for unlawful distribution under Alabama law was a serious drug offense under the ACCA definition); *Mims v. United States*, 2017 WL 2378085, at *7 (N.D. Ala. June 1, 2017) (denying relief where petitioner asserted claim under *Mathis*, holding that Alabama convictions for unlawful distribution of a controlled substance in violation of § 13A-12-211 are categorically serious drug offenses for purposes of the ACCA). Marshall's amended claim entitles him to no relief.

### III.   CONCLUSION

For the reasons set out above, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Marshall be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before June 4, 2018.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations under the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-

1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 21st day of May, 2018.

_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE