# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

ROBERT MARSHALL,      )
                        )
      Petitioner,      )
                        )
      v.                 )     CASE NO. 2:16-CV-477-WKW
                        )     [WO]
UNITED STATES OF      )
AMERICA,           )
                        )
      Respondent.    )

## MEMORANDUM OPINION AND ORDER

On May 21, 2018, the Magistrate Judge filed a Recommendation that Petitioner Robert Marshall's 28 U.S.C. § 2255 motion be denied. (Doc. # 42.) Petitioner timely filed objections. (Doc. # 31.) The court has conducted an independent and *de novo* review of those portions of the Recommendation to which objection is made. *See* 28 U.S.C. § 636(b). The court finds that the objections are due to be overruled and that the Recommendation is due to be adopted.

## I. FACTS

On May 9, 2012, Petitioner Robert Marshall was indicted along with eleven other defendants, all of whom were charged with conspiracy to distribute or to possess with intent to distribute 5 or more kilograms of powder and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Doc. # 1 in *United States v. Bledson, et al.*, Case No. 2:12-cr-87-WKW.) On August 9, 2012, a superseding indictment

was filed. Count 1 of the superseding indictment charged Petitioner and the other defendants with conspiracy to distribute 5 or more kilograms of powder and crack cocaine. The superseding indictment added numerous other counts, including Count 20, which charged Petitioner and codefendant Delmond Lamar Bledson with using a cellular telephone on or about April 2, 2012, to commit or facilitate the conspiracy alleged in Count 1, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. (Doc. # 201 in *United States v. Bledson, et al.*, Case No. 2:12-cr-87-WKW.)

At trial, on Count 1 of the superseding indictment, the jury convicted a number of Petitioner's codefendants of conspiracy to distribute or possess with intent to distribute 5 or more kilograms of cocaine. However, on Count 1, the jury convicted Petitioner only of the lesser included offense of conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine powder. The jury also convicted Petitioner on Count 20. (Doc. # 528 in *United States v. Bledson, et al.*, Case No. 2:12-cr-87-WKW.)

It is not disputed that Defendants Bledson and Willie Jerome Davis were large-scale distributors of cocaine in Montgomery, Autauga, and Elmore counties, Alabama, who generally maintained separate supply sources from each other, but who purchased cocaine from each other when their own supplies were low. At trial, Defendant Rajneesh Dikka Daniels testified that she used her apartment to receive, break down, weigh, repackage, and distribute over 50 kilograms of cocaine for

Davis. Daniels knew Petitioner Marshall because she was his cousin. Daniels also testified that, on at least ten occasions since 2009, she delivered two 125 gram packages of cocaine to Petitioner. Therefore, per Daniels's testimony, she sold at least 2,500 grams of cocaine to Petitioner on Davis's behalf between March 2009 and May 2012. (Doc. # 16-7 at 52.) Unlike Daniels's other purchasers, including Defendant Bledson,[1] Petitioner did not arrange the drug purchases through Davis. Instead, he contacted Daniels directly. For each sale, Daniels would personally deliver the cocaine to Petitioner at his house or apartment; Petitioner would pay Daniels for the drugs; and Daniels would later give Petitioner's money to Davis. (Doc. # 16-7 at 52.)

At trial, Bledson testified that he also sold cocaine to Petitioner. Through testimony of Bledson and Defendant Tony Gardner, as well as through audio recordings of telephone calls and video recordings of the event, the Government presented evidence that, on March 31, 2012, in a meeting Gardner had arranged,[2]

---

[1] Daniels testified that, at Davis's direction, she sold two 125-gram packages of cocaine to Defendant Bledson on at least four occasions between March 2009 and May 2012, in meetings arranged by Davis.

[2] Defendant Gardner arranged the meeting because, prior to March 31, 2012, Petitioner and Defendant Bledson did not have each other's telephone numbers because Petitioner normally used a different supplier. (Doc. # 16-10 at 49.) Gardner was a cocaine dealer who, since 2010, had regularly purchased 31-gram quantities of powder cocaine from Bledson. Gardner and Petitioner had been friends since their school days. (Doc. # 16-10 at 47–48.) After the March 31, 2012 meeting, Petitioner and Bledson exchanged numbers, and Petitioner made direct contact with Bledson by telephone.

Bledson met Petitioner for the first time to sell Petitioner 62 grams of cocaine in exchange for $2,150.00 in cash. (Doc. # 16-10 at 4-9, 49-50.) The March 31, 2012 sale took place at a Pizza Hut in Millbrook, Alabama. (Doc. # 16-10 at 4-9.) In conjunction with the March 31, 2012 cocaine sale, Gardner collected $50 "for [his] time." (Doc. # 16-10 at 50.)

Two days later, on April 2, 2012, Petitioner contacted Bledson by telephone to arrange another purchase of cocaine. Although the attempted cocaine purchase failed, Petitioner gave Bledson his telephone number so that Bledson could contact Petitioner directly in the future when he had cocaine to sell to Petitioner. (Doc. # 16-10 at 9–10.)

## II.  DISCUSSION

Upon a *de novo* review of the record, the court finds that the portions of the Recommendation to which objections have been made are free from factual and legal error and that the Recommendation is due to be adopted.

For the most part, Petitioner's objection merely restates arguments that were adequately and correctly addressed in the Recommendation. However, further discussion is warranted with respect to one potentially significant argument raised by Petitioner that is not a mere reassertion of matters already fully addressed in the

Recommendation.[3]  Specifically, Petitioner argues that the Magistrate Judge erred in denying him an evidentiary hearing to resolve factual conflicts between Petitioner's affidavit and that of his counsel.  The affidavits conflict as to (1) whether Petitioner told his counsel that he wished to present a defense that he purchased the powder cocaine to support his own drug habit and to share with his friends, and (2) whether Petitioner's counsel failed to adequately advise him of his right to testify that the drugs he purchased were for his own personal use and for distribution to his friends.  It is undisputed that Petitioner's counsel did not present the allegedly requested defense.  Petitioner did not testify.

Ordinarily, when a habeas petitioner and his counsel have filed conflicting, nonconclusory affidavits that create a credibility issue for determination, an evidentiary hearing is appropriate to resolve the conflict.  *See Blackledge v. Allison*, 431 U.S. 63, 82 n.25 (1977) ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful." (citation and internal quotation marks omitted)); *Rizo v. United States*, 446 F. App'x 264, 265 (11th Cir. 2011) ("[C]ontested fact[ual] issues in § 2255 cases

---

[3] The court does not find any error in the Recommendation that presents grounds for rejecting or modifying the recommendation or returning the matter to the Magistrate Judge for further consideration, including the portion of the recommendation addressing the conflicts between the affidavits and the fact that a hearing is not necessary.  However, in light of Petitioner's objections, further discussion is warranted to explain additional reasons why no hearing is necessary in this case.

must be decided on the basis of an evidentiary hearing, not affidavits." (quoting *Montgomery v. United States*, 469 F.2d 148, 150 (5th Cir. 1972)).[4]  Because of the conflicting affidavits, the Government conceded that Petitioner was entitled to an evidentiary hearing as to whether his counsel was ineffective in failing to properly advise him as to his right to testify.  (Doc. # 16 at 58–59.)  *See  Aron v. United States*, 291 F.3d 708, 714–15 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" (quoting *Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989)).

In this case, however, despite the conflicting affidavits and the Government's concession, an evidentiary hearing is not necessary to resolve the petition because, even if the assertions in Petitioner's affidavit are true, he is not entitled to relief. *Hembree v. United States*, 307 F. App'x 412, 424 (11th Cir. 2009) ("Because [the petitioner] has not established that an evidentiary hearing would alter the analysis of his § 2255 motion, the district court did not abuse its discretion in denying such relief.").  To prevail on a claim of ineffective assistance of counsel, including failure to properly advise as to the right to testify, a habeas "petitioner must establish [(1) that] his or her counsel's representation fell below an objective standard of

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

reasonableness, and (2) but for the deficiency in representation, a reasonable possibility exists that the result of the proceedings would have been different." *Fishbone v. Sec'y for Dep't of Corr.*, 165 F. App'x 800, 801 (11th Cir. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The conflicts between the affidavits pertain solely to the first requirement because those conflicts concern whether Petitioner's counsel rendered objectively unreasonable assistance by either (1) failing to present the defense that Petitioner purchased drugs for his own personal use and distribution to friends, or (2) failing to adequately advise Petitioner of his right to testify in order to present that same defense. Petitioner has failed to satisfy the second requirement: He has not demonstrated a reasonable possibility that, if he had testified regarding that defense or if his counsel had presented that defense to the jury, the outcome of the case would have been different.

A conspiracy requires "(1) an agreement to achieve unlawful activity; (2) the defendants' knowing and voluntary participation in the conspiracy; and (3) the commission of an act in furtherance of the agreement." *United States v. Yarbrough*, 260 F. App'x 230, 234 (11th Cir. 2008) (quoting *United States v. Brenson*, 104 F.3d 1267, 1281–82 (11th Cir. 1997)). The agreement between the conspirators must have as its object the commission of an act made unlawful by the narcotics laws. *United States v. Dekle*, 165 F.3d 826, 829 (11th Cir. 1999). An agreement to sell or purchase drugs cannot, in and of itself, constitute a conspiracy, "for it has no separate

criminal object." *Id*. There must be "an agreement to commit some other crime beyond the crime committed by the [drug sale] agreement itself." *Id*. (citing *United States v. Lechuga*, 994 F.2d 346, 349 (7th Cir. 1993) (en banc)).

For example, as Petitioner points out, a single drug sale solely for the buyer's personal use is not generally considered a conspiracy to distribute drugs because the substantive crime (the sale agreement between buyer and purchaser) has no separate criminal object beyond the sale itself. *Lechuga*, 994 F.2d at 349; *see also Dekle*, 165 F.3d at 830 ("[E]vidence that the parties understood their transactions to do no more than support the buyer's personal drug habit is antithetical to a finding of conspiracy." (citing *Lechuga*, 994 F.2d at 348–49)); *United States v. Hardy*, 895 F.2d 1331, 1134–35 (11th Cir. 1990) (holding that the transfer of an eighth of an ounce of cocaine from the defendant to a guest in his home did not constitute a drug distribution conspiracy because there was no indication that the parties to that single transfer agreed to participate in drug distribution); *United States v. Brown*, 872 F.2d 385, 391 (11th Cir. 1989) (holding that "the mere fact of a purchase by a consumer of an amount of illegal substance" does not establish a drug distribution conspiracy).

Likewise, a single drug sale of resale quantities, without more, has no criminal object but the sale itself and, therefore, is not a conspiracy, even if the seller happens to know the buyer intends to distribute some or all of the drugs purchased. *Lechuga*, 994 F.2d at 349. "The same result holds where the [buyer] purchases a small

quantity of an illegal drug to share with another person." *Id.* Similarly, although usually a feature of a distribution conspiracy, a pattern of repeated purchases does not, without more, establish the existence of the conspiracy. *Dekle*, 165 F.3d at 830; *see, e.g.*, *Hardy*, 895 F.3d at 1134–35 (holding that no agreement to distribute drugs, and therefore no drug conspiracy, was established by evidence of simple possession, such as evidence that the defendant regularly hosted drug parties, frequently personally consumed cocaine, and jointly possessed an eighth of an ounce of cocaine with another person for their joint personal use).

However, a conspiracy *does* exist where the parties to the drug sale not only knew that the drugs were being sold for further distribution, but also "'join[ed] both mind and hand to make accomplishment of [the illicit further distribution] possible.'" *Lechuga*, 994 F.2d at 349 (quoting *Direct Sales Co. v. United States*, 319 U.S. 703, 713 (1943)); *see also Brown*, 872 F.2d at 391 (holding that, to establish a conspiracy, the government must establish not only an illicit goal to distribute cocaine or possess cocaine with the intent to distribute, but the government must also show that the defendant in question knew of the illicit conspiratorial goal and voluntarily participated in it); *cf. Yarbrough*, 165 F. App'x at 230 (noting that, in *Dekle*, the court distinguished a doctor's scheme of personally illegally distributing drug prescriptions to individual patients from a "situation involving a purchaser in the chain of distribution in order to resell them"). It is not necessary that the

defendant "knew all of the details" of the drug distribution conspiracy; "knowledge of the essential objective is sufficient to impose liability." *United States v. Johnson*, 889 F.2d 1032, 1035–36 (11th Cir. 1989); *see also United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984) ("The knowledge requirement refers simply to knowledge of the essential objective of the conspiracy; a defendant may be found guilty notwithstanding that he did not have knowledge of all the details of the conspiracy or played only a minor role in the total operation."), *abrogated on other grounds by United States v. Lewis*, 492 F.3d 1219 (11th Cir. 2007).

Whether a drug transaction or series of transactions constitute a conspiracy — *i.e.*, whether the parties to the sale knew of larger distribution objectives and agreed to join their efforts to make the distribution enterprise possible — is largely dependent on the facts of each case. "The existence of a conspiracy may be demonstrated by circumstantial evidence such as inferences from the conduct of the defendant or circumstances indicating a scheme or plan." *Bascaro*, 742 F.2d at 1359; *Johnson*, 889 F.2d at 1035 ("Agreements to enter into conspiracies can be based on inferences from the conduct of the participants."). If evidence demonstrates that the defendant "knowingly assume[d] a role instrumental to the success of the conspiracy, the jury may properly infer that [the defendant was] a member in it." *Bascaro*, 742 F.2d at 1359. As Petitioner points out, "in a typical drug distribution scenario, involving a large-volume seller, several mid-level

distributors, and multiple street-level dealers, . . . all [participants] share the common goal of maximizing the cash returns of the business through the distribution of the drugs." *Dekle*, 165 F.3d at 829. Thus, in typical cases, evidence frequently found to support an inference of a conspiracy includes, but is not limited to, evidence of "a continuing relationship that resulted in the repeated" sale of drugs by or to a defendant, *Brown*, 165 F.3d at 830, that a defendant ran errands for the benefit of the distribution ring, that the defendant purchased the drugs on credit or that drugs were "fronted" in conjunction with the sale, and that the defendant in question assisted in transporting or arranging transport of drugs to be distributed. *See United States v. Beasley*, 2 F.3d 1551, 1560–61 (11th Cir. 1993); *Johnson*, 889 F.3d at 1035–36.

Petitioner contends that he was not part of the larger distribution conspiracy alleged in Count 1 of the indictment because he did not sell cocaine for the benefit of any of the defendants or collect money for them, because the other defendants had no direct pecuniary interest in what Petitioner did with the cocaine, and because Petitioner did not return a portion of the drug proceeds to the sellers, purchase on credit, or accept fronted drugs for resale. Petitioner contends that he was a cocaine user and was purchasing cocaine merely for "his personal use and the use of his friends." (Doc. # 43 at 3.)

In his memorandum in support of his petition, Petitioner states that he "and

several of his friends would pool their monies together so they could take advantage of the amount of cocaine they would receive if they all purchased cocaine together, instead of individual purchases," and that, after each purchase, "Petitioner and his friends would go to a predetermined location and enjoy their drugs with each other, *oftentimes, consuming it later*." (Doc. # 2 at 6 (emphasis added).)  In his reply brief in support of his petition, Petitioner characterized his purchases as being devoid of intent to join or further his codefendant's larger distribution business, but instead to make "*a bulk purchase of cocaine for the purpose of hosting a party in which the Petitioner was hosting where he would serve his guest[s] cocaine after those attending all contributed to the cost of the drugs at the party*." (Doc. # 20 at 5 (emphasis added).)  In an affidavit submitted in support of the Petition, sworn under penalty of perjury, Petitioner states:

> I HEREBY SWEAR, that I informed then counsel that I was on drugs and was purchasing these drugs for a group of friend[s] in which we would meet at various locations and consume these drugs. . . .
>
>  . . . .
>
> Like I've always stated, every purchase I ever made was for not only myself, but for others in which we would get together and use the drugs.

(Doc. # 20-1 at 1, 4-5.)

Thus, although Petitioner claims that he purchased drugs in part for himself,[5]

---

[5] The fact that Petitioner had a drug addiction and/or partook of some of the drugs at the cocaine parties he hosted does not alter the analysis.  The reason for the rule that an agreement to

he openly admits in his briefs and in sworn testimony that the purpose of his drug purchases was to obtain possession of drugs that he intended to distribute to others. *See* 21 U.S.C. § 802(11) ("The term 'distribute' means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical. The term 'distributor' means a person who so delivers a controlled substance or a listed chemical."); *id*. § 802(8) ("The terms 'deliver' or 'delivery' mean the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship."). (*See also* Doc. # 526 in *United States v. Bledson, et al.*, Case No. 2:12-cr-87-WKW, at 14 (jury instruction stating that "'to intend to distribute' is to plan to deliver possession to someone else, even if nothing of value is exchanged").)

Thus, Petitioner admits he purchased the drugs in bulk, then distributed them to those individuals who attended his cocaine parties and who contributed to the cost

---

purchase drugs for one's personal consumption does not constitute a conspiracy is that such a sale has no criminal object (such as drug distribution) beyond the sale itself. *Lechuga*, 994 F.2d at 349. That rationale is not relevant where, as here, the purchase was made to facilitate further drug distribution. (Doc. # 20-1 at 1, 4-5 ("Like I've always stated, every purchase I ever made was for not only myself, but for others in which we would get together and use the drugs.").) *Cf. Dekle*, 165 F.3d at 830 (holding that "evidence that the parties understood their transactions to *do no more than* support the buyer's personal drug habit is antithetical to a finding of conspiracy" (emphasis added)). Moreover, in this case, Petitioner personally partaking was incident and integral to his drug distribution scheme of hosting cocaine parties and charging guests to partake in the drugs as a group activity. (*See* Doc. # 20 at 5 (Petitioner's characterization of his purchases from his codefendants as "bulk purchase . . . for the purpose of hosting a party in which the Petitioner was hosting where he would serve his guest[s] cocaine after those attending all contributed to the cost of the drugs at the party").)

of the drugs he had already purchased.  Even though Petitioner admits he used some of the cocaine at his parties, Petitioner's purchases are distinct from the sort of situation where the buyer uses pooled money (made up of contributions from specific people) to purchase drugs, then uses those drugs immediately together with the same people who had already contributed to the purchase money.  Here, Petitioner used his own money to purchase drugs, then later determined who would receive the drugs based on who attended his parties and "reimbursed" him for the cost of the drugs.  *Cf. Hembree*, 307 F. App'x at 414, 422 (holding that the defendant could not be guilty of participating in a cocaine distribution conspiracy where he and five or six of his friends would "pool their money to buy cocaine" from the drug distributors "for immediate use"); *Hardy*, 895 F.2d at 1134 (holding that two people jointly obtaining and using an eighth of an ounce ("a small amount") of cocaine for their joint personal use was not evidence that the joint users were engaged in a drug distribution conspiracy).

In any event, unlike in the cases Petitioner cites, the distribution conspiracy in question here is not between Petitioner and those to whom he distributed drugs for immediate consumption.  The alleged distribution conspiracy here is between Petitioner and his codefendants for supplies of "bulk" quantities of cocaine needed to facilitate Petitioner's further cocaine party drug distribution activities.  *Cf. Hardy* 895 F.2d at 1335 (holding that a single transfer of drugs from the defendant to a

guest in his home, without more, did not constitute a drug distribution conspiracy because there was no evidence of a "prior contemporaneous agreement" to distribute drugs beyond the single transfer itself).

If Petitioner's characterization of the transaction is to be believed, this is not a typical case in which a defendant, as a purchaser, sought to become a distributor for the benefit of a larger drug conspiracy.[6] Thus, the usual factors, such as whether Petitioner bought on credit or returned a portion of the proceeds to the sellers, are not particularly useful in evaluating whether Petitioner was guilty of a drug conspiracy. However, nothing in the case law or applicable statute requires that a drug conspiracy can *only* occur in the typical situation where the buyer acts as the seller's agent in reselling the drugs. As explained in *Lechuga*, "[v]ertical integration is not a condition of conspiracy." 994 F.2d at 349. "It should not make a difference whether an illegal agreement takes the form of an illegal simulacrum of an employment contract or of a 'relational' contract, implying something more than a series of spot dealings at arm's length between dealers who have no interest in the success of each other's enterprise." *Id.* Further, there is no requirement that the

---

[6] Had the jury found Petitioner guilty of the larger drug conspiracy in Count 1, Petitioner's insistence that he did not participate in the sellers' larger distribution conspiracy might have more traction. Instead, the jury found Petitioner not guilty of the larger drug conspiracy in Count 1, but guilty of the lesser included charge of "conspiring to possess with intent to distribute or distribute" 500 grams or more of cocaine powder, an amount consistent with Petitioner's admitted purchases for his own distribution scheme. (Doc. # 528 in *United States v. Bledson, et al.*, Case No. 2:12-cr-87-WKW, at 10.)

buyer must be the one to "assume[ ] an integral role," *Bascaro*, 742 F.2d at 1359, in the seller's distribution activities, rather than the seller agreeing to assume an integral role for the benefit of the buyer's ongoing distribution activities. *See Lechuga*, 994 F.2d at 349 (noting that the existence of the conspiracy does not hinge on whether the buyer or the seller was the one who took the initiative to establish a long-term relationship for the purpose of distributing drugs).

As Petitioner freely admits, the reason he sought to obtain distribution quantities[7] of drugs ("bulk" quantities, in Petitioner's words (Doc. # 20 at 5)) from his codefendants was to supply his usual practice of distributing drugs to others. It is unlawful to distribute drugs *or* to possess drugs with the intent to distribute them. 21 U.S.C. § 841(a)(1). Petitioner does not argue that Daniels, Davis, and Bledson were unaware that he intended to obtain possession of the drugs for the purpose of personally distributing them to others. Further, based on the evidence and testimony presented, and based on the quantity and frequency of the drug purchases and attempted purchases (in at least one case only days apart), the jury could reasonably have inferred that Daniels, Davis, and Bledson knew that Petitioner intended to further distribute the drugs he purchased.

As Petitioner points out, a seller's mere knowledge that the buyer was

---

[7] At trial, Defendant Gardner testified that purchases for distribution usually involved 24 or more grams of powder cocaine. (Doc. # 16-10 at 47.)

distributing the drugs he purchased would not be enough, standing alone, to establish a drug distribution conspiracy. *Brown*, 872 F.2d at 391; *see also Lechuga*, 994 F.2d at 349; *cf. United States v. Borelli*, 336 F.2d 376, 384 (2d Cir. 1964) ("Purchase or sale of contraband may, of course, warrant the inference of an agreement going well beyond the particular transaction. . . . . But a sale or a purchase scarcely constitutes a sufficient basis for inferring agreement to cooperate with the opposite parties for whatever period they continue to deal in this type of contraband*, unless some such understanding is evidenced by other conduct which accompanies or supplements the transaction*." (emphasis added)).

However, unlike in one-time sale situations, Davis and Daniels had an ongoing relationship with Petitioner whereby they regularly provided a reliable source of supply for Petitioner's drug distribution activities. Unlike Davis's other customers to whom Daniels sold drugs only after Davis accepted and arranged for the sale, Petitioner would call Daniels directly to request cocaine, and she would personally deliver the cocaine to Petitioner's house or apartment. Moreover, by the time the conspiracy was interrupted by law enforcement, Petitioner had not only used Bledson as a supply source in an individual distribution quantity purchase, but, by exchanging telephone numbers with Bledson and instructing Bledson to contact him directly if he had cocaine to sell, Petitioner also took steps to establish an ongoing relationship in which Bledson also served as a regular, readily available

supply source for Petitioner's drug distribution activities. Regular supply sources of distribution quantities of cocaine are necessary to the success of a drug distribution scheme like Petitioner's, and regular wholesale customers are integral to the success of a wholesale distributor's business. *See United States v. Hess*, 691 F.2d 984, 988 (11th Cir. 1982) (recognizing that, while "a fence does not automatically become a conspirator by purchasing stolen property," the existence of a fence is necessary for the success of a hijacking conspiracy, and "[a] fence who holds himself out as a place to dispose of stolen goods . . . is a conspirator"); *cf. United States v. Parker*, 554 F.3d 230, 239 (2d Cir. 2009) (noting the limited nature of the buyer-seller rule and holding the evidence supported the finding of a conspiracy between wholesale drug sellers and each of three regular customers whom the wholesalers knew to be reselling the drugs because, due to the wholesalers' desire to cultivate repeat customers and the purchasers' desire to cultivate reliable supply sources, the wholesalers and their customers shared an interest in success of one another's distribution efforts; the court noted that "[t]he business of selling wholesale quantities depends on the ability of the customers to resell" and that the purchasers had an interest in the wholesalers' success as a reliable source of drugs for resale); *United States v. Hawkins*, 547 F.3d 66, 75 (2d Cir. 2008) (noting that exchange of telephone numbers and knowing where to find a supplier can indicate that a buyer was more than "just a . . . customer who happened to intend to redistribute cocaine

independently," but a participant in an agreement to facilitate ongoing drug distribution efforts).

Thus, a reasonable jury could have concluded that, in conjunction with the drug sales, Davis, Daniels, and Bledson agreed to something more than individual sales transactions that existed for their own sake, or to a series of transactions in which they had no interest in the ongoing success of Petitioner's drug distribution activities. A reasonable jury could have concluded that Davis, Daniels, and Bledson willingly "joined mind and hand" in a mutually beneficial arrangement or informal plan with Petitioner to make his drug distribution activities possible by serving in ongoing, instrumental roles as some of Petitioner's regularly available distribution-quantity powder cocaine supply sources.[8] *See Hembree*, 307 F. App'x at 422 (noting that, "[i]n *Hardy* and *Dekle*, we did not hold that a buyer/seller relationship cannot be characterized as a continued activity within an already existent conspiracy"); *Dekle*, 165 F.3d at 829 (citing *Lechuga* in noting that, in drug conspiracies, the buyer

---

[8] The court notes that, in general, the prolonged cooperation inherent in such a business relationship requires development of a higher degree of mutual risk and mutual trust than is inherent in arms-length, one-time sales transactions. The record contains evidence from which a relationship of mutual trust between Petitioner and his suppliers can reasonably be inferred, such as Petitioner's habit of arranging drug purchases with Daniels directly (rather than Davis screening and accepting the purchase request and directing Daniels to fill the order as was the practice with Davis's and Daniels's other customers), Daniels personally making deliveries to Petitioner's house or apartment, and Petitioner's encouragement to Bledson to store Petitioner's number in his cell phone and make direct contact for future sales. In particular, mutual trust and some degree of increased personal risk of exposure are inherent in divulging one's home and apartment addresses and cell phone number to a large scale drug supplier for ready accessibility, as Petitioner did to ensure ease of access to his supply sources and to facilitate deliveries.

and seller generally have some mutual interest in the success of the distribution activity); *Bascaro*, 742 F.2d at 1360 (holding that defendants were more than "mere purchasers" of marijuana where "[t]hey were among the selling group's best buyers, they purchased from the selling group on numerous occasions, and maintained a close relationship with the selling group"); *see also Lechuga*, 994 F.2d at 350 ("Prolonged cooperation is neither the meaning of conspiracy nor an essential element, but it is one type of evidence of an agreement that goes beyond what is implicit in any consensual undertaking, such as a spot sale."); *Bascaro*, 742 F.2d at 1359 (holding that, where one "assumes a role instrumental to the success of the conspiracy, the jury may properly infer that he is a member in it"); *cf.*, *e.g.*, *United States v. Pollet*, 588 F. App'x 340, 341 (5th Cir. 2014) (holding evidence supported a finding of a conspiracy between a regular purchaser of wholesale methamphetamine quantities and her wholesale dealer where, among other things, the "supplier often facilitated [the purchaser's] distribution activity by delivering the methamphetamine to her"); *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012) (finding evidence of a distribution conspiracy between a wholesaler and purchaser where the wholesaler undertook steps to cultivate the buyer as a repeat customer); *Hawkins*, 547 F.3d at 75 (holding that a reasonable jury could have found a conspiracy between a wholesaler and a regular customer known to be reselling the drugs on grounds that parties entered a "distribution agreement . . . that afforded [the

customer] a source of supply" for resale and the wholesaler "another outlet – albeit small – for his contraband" on "an ongoing basis").

Put another way, if presented at trial by Petitioner's counsel or testimony, Petitioner's admission that he used his codefendants as the supply sources for his own drug distribution activities would have been, in effect, an outright confession to the very charges on which the jury found him guilty. Thus, Petitioner has not established a reasonable possibility that, even if the allegations in his affidavit are true, and even if he had presented testimony or a defense that he purchased the drugs for himself and for distribution to his friends, the jury would not have found him guilty of the conspiracy (and, by extension, of using a cell phone in furtherance of the conspiracy). Therefore, Petitioner cannot prevail on his claim of ineffective assistance of counsel, and he is not entitled to an evidentiary hearing.

### III.  CONCLUSION

Accordingly, it is ORDERED that the Recommendation (Doc. # 42) is ADOPTED, the objections (Doc. # 43) are OVERRULED, the 28 U.S.C. 2255 motion is DENIED, and this case is DISMISSED with prejudice.

Final judgment will be entered separately.

DONE this 29th day of June, 2018.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE